UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

TIMOTHY ROBINSON, on behalf of T.R., a Minor,

    PLAINTIFF

v.

ELI LILLY AND COMPANY,

    DEFENDANT

CIVIL ACTION NO. 5:17-cv-0338-KKC

## MOTION FOR PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 26(c)(1)(A), Defendant Eli Lilly and Company ("Lilly") hereby moves this Court for the entry of a protective order barring the noticed depositions of two additional Lilly employees (Jim Krull, Pharm. D. and a designee from the Pregnancy and Teratogenicity Safety Committee (PTSC)). Dr. Timothy Garnett, Lilly's Chief Medical Officer, was already deposed as a Rule 30(b)(6) witness on June 24, 2019.

**I.      INTRODUCTION**

In this product liability action, the Court limited the initial phase of discovery to the issue of general causation and related expert discovery.[1] This phased approach to discovery requires Plaintiff, in the first instance, to show through admissible expert testimony that Prozac is capable of causing aortic stenosis or similar cardiac defects. The depositions of the two Lilly employees are irrelevant to this inquiry. Lilly asks the Court to enter a protective order barring

---

[1] Nov. 5, 2018 Scheduling Order at 2, Dkt. No. 20.

the noticed depositions from going forward. If this case progresses to the next phase of discovery, Lilly has no objection to producing Dr. Krull at that time.

## II. FACTUAL BACKGROUND

### A. The Court's Scheduling Order Limited Discovery During Phase 1 to General Causation

On November 5, 2018, the Court entered a Scheduling Order initially focusing on "whether in utero exposure to Prozac can cause aortic stenosis or similar cardiac malfunctions," with other Plaintiff-specific discovery, including liability discovery related to Plaintiff's failure to warn claims, to follow, if appropriate.[2] The Court reasoned that "if the Plaintiff is unable to establish general causation, then the parties will not be required to undergo the time and expense of further discovery and litigation."[3] The Court's scheduling order, as initially entered and as amended on March 19, 2019, makes clear that the general causation phase of this litigation is for expert discovery, setting deadlines for the exchange of expert reports (which the parties have completed), expert depositions, and *Daubert* motions.[4] The schedule does not provide for any depositions of Lilly employees.

Plaintiff's discovery efforts go well beyond the topic of general causation, seeking discovery from company witnesses on topics such as notice, failure to warn and failure to investigate, which are relevant only if the case progresses to the liability phase.[5]

---

[2] Nov. 5, 2018 Scheduling Order at 1-2, Dkt. No. 20.

[3] *Id.* at 2.

[4] *See id.* at 2-3; Mar. 19, 2019 Scheduling Order, Dkt. No. 27.

[5] Dr. Sadler cites only two documents produced by Lilly in his lengthy report, one of which was the FDA-approved package insert for Prozac. The other is a disproportionality analysis performed by Lilly. Lilly will demonstrate in its *Daubert* motion that this analysis and the other available data do not support a finding of general causation.

### B. Plaintiff Has Already Been Provided Discovery Well Beyond What is Needed for Phase 1

Lilly has already provided Plaintiff with significant discovery. First, Lilly produced more than two million pages of documents from its regulatory and company files that address the safety of Prozac. Second, Lilly produced its expert reports outlining its expert position on general causation and the materials in support of each opinion. Plaintiff then sought a Rule 30(b)(6) deposition of Lilly's Chief Medical Officer, Dr. Timothy Garnett, to testify regarding "(1) Lilly's evaluation of clinical data, including adverse event reports, epidemiology studies, and clinical trials, relevant to Prozac and aortic stenosis and related cardiac defects and (2) Lilly's pharmacovigilance practices and procedures."[6] Although skeptical that this deposition was appropriate to general causation, Lilly nonetheless produced Dr. Garnett for deposition.

Plaintiff's counsel, however, spent the bulk of the deposition on topics wholly irrelevant to general causation, venturing far beyond the bounds of the topics on which Dr. Garnett was designated to testify. For example, Plaintiff's counsel spent considerable time asking about Lilly's allegedly insufficient investigation into a potential risk of cardiac defects, which bears on liability, not general causation.[7] He spent very little time asking about the studies and analyses that Lilly conducted or other actual data -- which arguably could have some bearing on general causation. He also veered into other irrelevant topics, such as Lilly's marketing materials and other communications with physicians regarding Prozac,[8] and Lilly's

---

[6] *See* Emails between A. Kantra and M.M. Spence, counsel for Lilly, and A. Davis, counsel for Plaintiff, dated Apr. 30, 2019 to May 20, 2019, attached as Ex. 1.

[7] *See* Tr. of Dep. of Dr. Timothy Garnett ("Garnett Tr.") at 60:17-78:25, 88:20-95:16, 102:5-17, 104:1-109:1, June 24, 2019, attached as Ex. 2.

[8] *See id.* at 32:5-35:6, 52:19-53:19, 79:4-88:19

interactions with regulators.[9] Ultimately, however, Dr. Garnett was able to explain Lilly's evaluation of causation, which is that there is a potential risk of birth defects associated with in utero exposure to Prozac, but that causation has not been established.[10]

### C. Additional Requested Depositions Are Not Relevant to Phase 1

On July 19, 2019, Plaintiff noticed the depositions of Dr. James Krull, a surveillance scientist at Lilly who worked on Prozac for a number of years, and also noticed the chair of Lilly's PTSC, whom Dr. Garnett had mentioned during his deposition.[11] Dr. Krull has knowledge of Lilly's evaluations of Prozac and cardiac birth defects over the years. This information may be relevant to the types of information that Lilly evaluated (i.e., an alleged failure to warn), but is irrelevant to the threshold issue of whether Prozac is capable of causing aortic stenosis or similar cardiac malfunctions.

With respect to the PTSC, Dr. Garnett explained in his deposition that this was an ad hoc committee that provided expertise to different product teams as needed, and that, to his knowledge, the PTSC had met once in 2007 to discuss data on Prozac and birth defects.[12] Dr. Garnett was unsure whether it had discussed Prozac on any other occasion.[13] Counsel for Lilly subsequently confirmed that the committee did not, and informed Plaintiff accordingly.[14] The attached minutes of that meeting from 12 years ago confirm that the PTSC listened to

---

[9] *See id.* at 95:21-106:7, 110:10-115:12.

[10] *See id.* at 115:13-118:17.

[11] *See* Email from A. Davis, counsel for Plaintiff, to A. Kantra, counsel for Lilly, dated July 19, 2019, attached as Ex. 3.

[12] *See* Garnett Tr. at 126:4-131:1.

[13] *See id.* at 129:3-8.

[14] *See* Email from A. Kantra, counsel for Lilly, to A. Davis, counsel for Plaintiff, dated July 23, 2019, attached as Ex. 3.

presentations of information reported in two recently published studies that evaluated the risk of birth defects in pregnant women treated with selective serotonin reuptake inhibitors (SSRIs) and a related editorial and in abstracts presented in the Birth Defects Research section of the 2007 Teratology Society Meeting.[15]  The PTSC did not make a determination relevant to general causation, and plaintiffs' expert certainly has access to the studies to evaluate the issue.

Lilly informed Plaintiff that it would not be producing these witnesses, and the parties agreed that Lilly would seek a protective order, having exhausted meet and confer efforts.[16]

### III. ARGUMENT

A district court may "'protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' by issuing a protective order 'forbidding . . . discovery' if the court has 'good cause.'" *See Graves v. Bowles*, 419 Fed. Appx. 640, 645 (6th Cir. 2011) (citing Fed. R. Civ. P. 26(c)(1)(A). "[A] showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement of Rule 26(c)." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (further stating that "a plaintiff may not be permitted to 'go fishing'" with depositions).  A protective order prohibiting the noticed depositions of Dr. Krull and a representative of the PTSC is warranted here because the depositions are unnecessary and inappropriate in this general causation phase of discovery.  They can serve no purpose other than to harass and burden Lilly and its employees.

This Court's scheduling orders make clear that expert discovery is the appropriate focus during this phase of discovery.  This is for good reason.  Under Kentucky law, which

---

[15] *See* PTSC Meeting Minutes, Aug. 23, 2007, attached as Exhibit 4.

[16] *See* Emails between A. Davis, counsel for Plaintiff, and A. Kantra, counsel for Lilly, dated July 3, 2019 to July 23, 2019, attached as Ex. 3.

applies to this action, general causation is an issue that must be proved by expert testimony. *See, e.g., Hans v. Matrixx Initiatives, Inc.*, No. 3:04-CV-540, 2007 U.S. Dist. LEXIS 66105, at *10 (W.D. Ky. Sep. 5, 2007) ("personal injury cases arising out of exposure to drugs involve complex questions of medical causation beyond the understanding of a lay person, and these require expert testimony on causation issues") (citing *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005); *In re Baycol Prods. Litig.*, 321 F.Supp.2d 1118, 1126 (D. Minn. 2004)); *see also In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 320 (S.D.N.Y. 2016) (holding that the alleged admissions of a party were not a substitute for expert testimony to establish causation), *affirmed on other grounds*, 713 Fed. Appx. 11, 16 (2d Cir. 2017).

Allowing the deposition of Dr. Krull at this point would undermine the purpose of phased discovery, which is to determine whether Plaintiff has sufficient admissible expert evidence on causation to proceed with his case.[17] Plaintiff's general causation expert, Dr. Thomas Sadler, has already submitted his expert report, without identifying any need for depositions of company witnesses or any other additional discovery from Lilly to reach his opinions. At most, the testimony of Lilly's witnesses may ultimately become relevant if the liability phase is reached but is irrelevant to whether there is adequate evidence of general causation, which is a scientific inquiry this phase of discovery is designed to test. *See Mirena*, 202 F. Supp. 3d at 304 (a party's admissions do "not serve the purpose of expert testimony: providing the jury with a scientific, non-speculative basis to assess general causation. It is hard to imagine a case where Plaintiffs' counsel could not find an expert who could make the point using a reliable methodology, yet a patchwork of snippets of Defendants' employees' statements would do the trick.")

---

[17] *See* Nov. 5, 2018 Scheduling Order at 2, Dkt. No. 20.

With respect to the "PTSC witness," Lilly has explained to Plaintiff that this committee has discussed Prozac and birth defects only once. The substance of this discussion is evident in the meeting minutes, which Lilly has already produced to Plaintiff.[18] Those minutes establish that the PTSC did not make a determination relevant to general causation and concluded that ongoing surveillance of the literature should continue. Plaintiff has not identified what other information relevant to general causation he expects to obtain from deposing a member of the PTSC about this one meeting minute. A protective order is therefore appropriate in order to avoid the time and expense that the depositions of Dr. Krull and the PTSC witness would entail. If Plaintiff's expert survives Lilly's intended *Daubert* challenge, Lilly recognizes that there may be a valid basis for Plaintiff to take one or both of these depositions in the second phase of discovery.

Finally, it is not appropriate for Plaintiff to question Lilly fact witnesses on this topic of general causation, even if that is his intent. First, Plaintiff has already questioned a Lilly Rule 30(b)(6) witness – its Chief Medical Officer – on this topic, and plaintiffs have testimony as to the issue. Second, the topic should be directed to Lilly's experts. Even Rule 30(b)(6) witnesses, while issuing testimony that is binding on the company, are still fact witnesses, and are limited to testifying as to facts known by the company, not the company's legal positions or ultimate issues in the litigation. *See Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14-cv-00022-JHM, 2016 U.S. Dist. LEXIS 127975, at *15 (W.D. Ky. Sept. 19, 2016) ("a lay witness cannot testify as to legal conclusions, and such questions exceed the permissible scope of a 30(b)(6) deposition"); *Babcock Power, Inc. v. Kapsalis*, No. 3:13-CV-717-CRS-CHL, 2016 U.S. Dist. LEXIS 158370, at *6 (W.D. Ky. Nov. 14, 2016) (a "Rule 30(b)(6) deponent(s) is not

---

[18] *See* PTSC Meeting Minutes, Aug. 23, 2007, attached as Exhibit 4.

required to give expert testimony"); *T&H Landscaping, LLC. v. Colo. Structures Inc.*, No. 06-cv-00891-REB-MEH, 2007 U.S. Dist. LEXIS 63495, at *4 (D. Colo. Aug. 28, 2007) (the purpose of a 30(b)(6) deposition is to "to obtain factual information," not a party's "legal positions and arguments"). Plaintiff has opted to delay taking Lilly's expert witnesses' depositions until after the issues with the fact witness depositions are resolved.[19] Therefore, Lilly reserves the right to object to expert depositions that Plaintiff seeks to take after the deadline for taking expert depositions expires.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should enter a protective order preventing Plaintiff from deposing Dr. Krull and a Rule 30(b)(6) witness on the PTSC, and providing Lilly with all other appropriate relief.

---

[19] *See* Email from A. Davis, counsel for Plaintiff, to A. Kantra, counsel for Lilly, dated July 19, 2019, attached as Ex. 3.

-9-

Dated: July <u>26</u>, 2019          Respectfully submitted,

/s/ Carol Dan Browning
Carol Dan Browning
Stites & Harbison
400 W. Market Street, Suite 1800
Louisville, KY 40202-3352
cbrowning@stites.com
502-681-0516

Andrew Kantra
*Admitted Pro Hac Vice*
Pepper Hamilton LLP
Eighteenth and Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103-2799
kantraa@pepperlaw.com
(215) 981-4000

*Attorneys for Defendant Eli Lilly*

*and Company*

-10-

## CERTIFICATE OF SERVICE

I, Carol Dan Browning, hereby certify that on this 26 day of July, 2019, pursuant to the Federal Rules of Civil Procedure, I did cause to have a true and correct copy of the foregoing Motion for Protective Order served via ECF upon Plaintiff's counsel as follows:

Alex C. Davis
Jones Ward PLC
The Pointe
1205 E Washington Street, Suite 111
Louisville, Kentucky 40206

alex@jonesward.com

/s/ Carol Dan Browning
Carol Dan Browning

Dated: July 26, 2019