# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

TIMOTHY ROBINSON, on behalf of T.R., a Minor,

    PLAINTIFF

v.

ELI LILLY AND COMPANY,

DEFENDANT

CIVIL ACTION NO. 5:17-cv-0338-KKC

## ELI LILLY AND COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Earlier this week, the Court granted Eli Lilly and Company's ("Lilly's") motion for a protective order to prevent depositions of two company employees. *See* Oct. 1, 2019 Order (Dkt. No. 50). The Court found that such testimony would not "address the narrow issue of general causation" and that there had been no indication Plaintiff's sole causation expert required the deposition testimony of either witness. Plaintiff now seeks to compel the production of disproportionality analyses of Prozac conducted by Lilly's safety group since 2011. Dkt. No. 44. The motion should be denied for the same reasons.

The Court has limited this phase of discovery to general causation, which is designed to test whether Plaintiff can prove through admissible expert testimony that Prozac is capable of causing "aortic stenosis or similar cardiac [malformations]." *See* Nov. 5, 2018 Scheduling Order at 2 (Dkt. No. 20). Disproportionality analyses, however, are not a valid tool for assessing a causal relationship between a drug and an adverse event, a fact which Plaintiff's

sole causation expert freely admits and which FDA has stated in guidance to the pharmaceutical industry. Because the documents cannot establish causation and do not inform the opinions of Plaintiff's expert, they are irrelevant in this general causation phase of the litigation.

## I. DISPROPORTIONALITY ANALYSES ARE NOT RELEVANT TO PLAINTIFF'S GENERAL CAUSATION CASE

Disproportionality analysis is a data-mining tool that screens adverse event report ("AER") databases for drug-event pairs that diverge from expected reporting patterns in order to detect potential safety signals. *See, e.g.,* FDA Guidance for Industry, Good Pharmacovigilance Practices and Pharmacoepidemiologic Assessment (Mar. 2005) ("FDA Guidance") at 8-10.[1] Plaintiff speculates, without any scientific grounding, that reports of disproportionality analyses "will yield useful information about the *causal* relationship between ingestion of Prozac by pregnant women and cardiac birth defects in newborn babies." Pl. Mot. at 4 (emphasis added). However, as the FDA has explained, such analyses are "not a tool for establishing causal attributions between products and adverse events." FDA Guidance at 8; *accord Wells v. SmithKline Beecham Corp.*, 2009 U.S. Dist. LEXIS 21251, at *37, 2009 WL 564303 (W.D. Tex. Feb. 18, 2009). The Montastruc article that Plaintiff cites in his motion makes this very point, stating that the "main use [of disproportionality analysis] is to confirm (or not) a *potential association* based on a pharmacological hypothesis between a specific drug and an [adverse event report]" and that such analysis "should be only considered as *exploratory*" in a context of signal detection.[2] The requested documents therefore will not tend to show whether Prozac is capable of causing cardiac birth defects.

---

[1] *Available at* https://www.fda.gov/media/71546/download.

[2] Montastruc, et. al., *Benefits and Strengths of the Disproportionality Analysis for Identification of Adverse Drug Reactions in a Pharmacovigilance Database*, Br. J. Clin. Pharmacol, at 906-07 (Dec. 2011) (emphasis added).

Plaintiff's only expert, Dr. Thomas Sadler, acknowledged that disproportionality analyses have important limitations and can only be used to show a "signal" or "potential association," rather than causation.[3] Dr. Sadler further confirmed that controlled epidemiologic studies were necessary for him to reach any conclusions as to causation.[4] At no point in his deposition did Dr. Sadler indicate that he needed additional discovery on disproportionality analyses from Lilly in order to reach his opinions. Thus, regardless of what Plaintiff's counsel believes that the documents may show, the requested discovery would not inform or alter his own expert's opinions on general causation. It is therefore irrelevant in this phase of the litigation. *See* Oct. 1, 2019 Order at 3-4 (Dkt. No. 50) (barring other discovery that was irrelevant to Dr. Sadler's opinions).

## II. PLAINTIFF REQUIRES EXPERT TESTIMONY TO PROVE HIS CLAIMS

Plaintiff's motion further argues that proving a causal relationship between Prozac and cardiac birth defects "may not require expert testimony, if Eli Lilly's own employees acknowledge the causal relationship in their analyses." Pl. Mot. at 4. This Court, however, has explicitly recognized the need for Plaintiff to prove his claims with expert testimony. Oct. 1, 2019 Order at 4 (Dkt. No. 50). Plaintiff cites no case in support of his position that he can prove his case without an expert, and numerous courts have held to the contrary.[5] *See, e.g., Hans v. Matrixx Initiatives, Inc.*, 2007 U.S. Dist. LEXIS 66105, at *10, 2007 WL 2668594 (W.D. Ky.

---

[3] Transcript of Deposition of Thomas W. Sadler, Ph.D., conducted August 13, 2019 at 201:24-203:22, attached as Ex. 1.

[4] *Id.* at 204:3-7. Lilly has moved to exclude the testimony of Dr. Sadler because his analysis of the epidemiologic literature is flawed. Dkt. No. 48.

[5] In opposing Lilly's Motion for Protective Order, Plaintiff previously acknowledged that his claims required expert proof. Dkt. No. 35 at 5 ("Plaintiff does not deny that expert testimony is a requirement for establishing general causation in prescription cases.")

Sep. 5, 2007) ("personal injury cases arising out of exposure to drugs involve complex questions of medical causation beyond the understanding of a lay person, and these require expert testimony on causation issues") (citing *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005)); *see also In re Baycol Prods. Litig.,* 321 F.Supp.2d 1118, 1126 (D. Minn. 2004); *In re Zoloft Sertraline Hydrochloride Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 498 (E.D. Pa. 2016), *aff'd* 858 F.3d 787 (3d Cir. 2017) (entering summary judgment in Zoloft birth defects case due to the absence of admissible expert testimony on general causation); *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 320 (S.D.N.Y. 2016) (holding that the alleged admissions of a party were not a substitute for expert testimony to establish causation), *affirmed on other grounds*, 713 Fed. Appx. 11 (2d Cir. 2017).

As the *Mirena* court explained, a party's admissions do "not serve the purpose of expert testimony: providing the jury with a scientific, non-speculative basis to assess general causation. It is hard to imagine a case where Plaintiffs' counsel could not find an expert who could make the point using a reliable methodology, yet a patchwork of snippets of Defendants' employees' statements would do the trick." *Mirena*, 202 F. Supp. 3d at 320. In short, documents that are not relevant to Dr. Sadler's opinion have no place in discovery in this general causation phase of the litigation.

In any event, the Court should not permit Plaintiff to go on a fishing expedition for hypothetical admissions of causation by Lilly employees. There is no reason to believe such statements exist, other than Plaintiff's rank speculation. As explained above, disproportionality analyses are simply not probative of causation, so there is no reason to think that Lilly employees would have found causation in these analyses. And, Plaintiff has conducted a Rule 30(b)(6) deposition of Lilly's Chief Medical Officer, Dr. Timothy Garnett, and elicited Lilly's interpretation of what the data show on Prozac and cardiac birth defects: there is a potential risk

of birth defects associated with in utero exposure to Prozac, but causation has not been established.[6]

### III. LILLY'S CONDUCT IN DISCOVERY IS PROPORTIONAL TO THE NEEDS OF THE CASE

Plaintiff spends much of his motion alternately complaining that Lilly has produced either too many or too few documents.  *See* Pl. Mot. at 2-3.  Plaintiff served sweepingly broad discovery requests, including but not limited to "*all* documents previously produced or to be produced by Lilly in other U.S. lawsuits related to maternal Prozac use and the risk of congenital heart defects."[7]  Lilly appropriately objected to these requests where they were, for example, beyond the scope of general causation discovery or overly burdensome.[8]  Yet as Plaintiff acknowledges, Lilly did produce over 2 million pages of documents, the volume of which reflects the breadth of Plaintiff's discovery requests.  And although Plaintiff complains about the format of Lilly's production, the documents were produced in a manner consistent with the Protective Order and Electronically Stored Information Protocol agreed to by Plaintiff and entered by this Court, in accordance with Federal Rule of Civil Procedure 34.  Plaintiff's complaints about Lilly's document production are accordingly without merit.  In addition, Plaintiff's claim that Lilly has "shown a pattern of concealing from the public and from the legal system about the drug Prozac," which references an article detailing a settlement agreement

---

[6] Transcript of Deposition of Dr. Timothy Garnett, conducted June 24, 2019 at 115:13-118:17, attached as Ex. 2.  That Dr. Garnett has not personally reviewed every document produced by Lilly in this litigation to date does not in any way support Plaintiff's leap that the requested documents will in fact contain evidence of causation.  *See* Pl. Mot. at 4.

[7] *See* Lilly's Responses to Plaintiff's First Set of Requests for Production, served Jan. 11, 2019, attached as Ex. 4 to Plaintiff's Motion (emphasis added).

[8] *See id.*

-6-

entered into by Lilly over twenty years ago (Pl. Mot. at 5), is an outlandish and desperate attempt to impute misconduct to Lilly in this case, where none exists.

## IV. CONCLUSION

For all of the foregoing reasons, Lilly respectfully requests that the Court deny Plaintiff's motion to compel.

Dated: October 3, 2019

Respectfully submitted,

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison
400 W. Market Street, Suite 1800
Louisville, KY 40202-3352
cbrowning@stites.com
502-681-0516

and

Andrew Kantra
*Admitted Pro Hac Vice*
Pepper Hamilton LLP
Eighteenth and Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103-2799
kantraa@pepperlaw.com
(215) 981-4000

*Attorneys for Defendant Eli Lilly and Company*

**CERTIFICATE OF SERVICE**

      I, Carol Dan Browning, hereby certify that on this 3rd day of October, 2019, pursuant to the Federal Rules of Civil Procedure, I did cause to have a true and correct copy of the foregoing document served via ECF upon plaintiff's counsel as follows:

>Jasper D. Ward, IV
>Alex C. Davis
>Jones Ward PLC
>The Pointe
>1205 E Washington Street, Suite 111
>Louisville, Kentucky 40206

                                          */s/ Carol Dan Browning*
                                          Carol Dan Browning